## Jeffries, Appellant, *v.* Security Bank Note Company et al.

Argued September 27, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

172

*John E. Evans, Jr.,* with him *Evans, Evans & Spinelli,* for appellant.

*J. Roy Dickie,* with him *Hamilton A. Robinson* and *Dickie, Robinson & McCamey,* for Grant Boulevard Realty Company, appellee.

*James J. Burns, Jr.,* for Security Bank Note Company, appellee.

OPINION BY MR. JUSTICE LINN, November 26, 1945: ·
The plaintiff appeals from the refusal to take off a compulsory nonsuit in his action to recover for personal injuries alleged to have resulted from the joint negligence of two defendants, the Security Bank Note Company and the Grant Boulevard Realty Company.

The Realty company owned a building let to tenants, one of them, the Security company, occupying part of an upper floor. The tenants had the use of various entrances and of elevator facilities.

The plaintiff was employed by North Side Transfer Company, which, at various times, was engaged in delivering "heavy packages of materials for the Defendant Bank Note Company, having transferred the same from their plant, in Pittsburgh." An entrance for trucks led to the elevator. The Transfer company's truck was driven by one Tegtmier. The plaintiff was Tegtmier's assistant on the truck which was loaded with heavy crates or packages of paper. The truck was backed into the entrance as far as the elevator shaft. Upon arrival, they called up the elevator shaft for the elevator, which was then brought down by two of the Security company's employes and put in place with the floor of

the elevator level with the floor of the truck; an iron plate was placed from one to the other to facilitate moving a hand truck from the motor truck to the elevator. The plaintiff was familiar with the place and its operation. A hydraulic jack or lift about 40 inches long, 18 inches wide, with a "big long handle," was on the elevator when it was brought down; this jack moved on four wheels. The elevator was 12 feet wide. The hand truck used for transferring paper from the motor truck to the elevator was 35 inches wide, 45 inches long and 8 inches high. The morning was dark and foggy. The plaintiff said "the general lighting condition of the elevator was dim;" there was no electric light. After Tegtmier, the driver, backed the truck to the elevator, he lit a pineapple flare and "placed it on to the edge of the elevator." He said that "it made three to four feet of light,". but did not illuminate the back of the elevator. The hydraulic jack occupied a place on the elevator about eight feet from the front and while the plaintiff knew it was somewhere on the elevator he did not know exactly where and made no examination to find where it was. A heavy package of paper was loaded on the hand truck on the motor truck and while the plaintiff was pulling the loaded hand truck back from the motor truck on to the elevator, walking backwards, he tripped over the hydraulic jack and sustained the injury for which he sues. The learned trial judge ruled the plaintiff was guilty of contributory negligence, being familiar with the place, the elevator, the hydraulic jack, and, in the circumstances, moving backward without observing where he was going, or first ascertaining where the jack was. He said, "Thus, according to plaintiff's own testimony, he could see only three to six feet when he looked 'around,' but despite that limited vision he proceeded beyond that area, for a distance of eight to ten feet to the middle of the elevator where the jack was standing, without looking again. . . . The least the plaintiff could have done if he wanted to proceed backward into the

elevator despite the dim light, was to stop again, within the area that he had previously inspected, and look into the area that he was about to back into. Under no circumstances should he have walked backward beyond the area that he had looked over."

The plaintiff had testified that he did not look about the elevator to see whether it contained anything that would interfere with his movement, although he knew that the hydraulic jack was on the elevator; he said he had never known the jack to be at any other place than at the back or side of the elevator. The learned trial judge referred to the opinion of *Modony v. Megdal,* 318 Pa. 273, 278, 178 A. 395, in which we said: ". . . 'As was the situation in Lerner v. Phila., 221 Pa. 294, 295, 70 A. 755, she chose to rely on her former experience, and abandoned the use of her natural senses for the time being. She blindly trusted a dangerous situation and was injured. As pointed out by the court below, "the plaintiff having stepped down in the dark was in no different situation than she would have been had she stepped down with her eyes shut": *Wilhelm v. Sunbury, etc. Ry. Co.,* 281 Pa. 69, 73, 126 A. 191.' We, therefore affirmed the judgment for defendant non obstante veredicto."

The hydraulic jack was a quite large movable object required for use on the elevator as the plaintiff knew; he should therefore not have assumed that he could walk backwards in safety and without looking to ascertain whether the way was clear. See *Fleming v. John Wanamaker,* 150 Pa. Superior Ct. 658, 28 A. 2d 725; *Conboy v. Osage Tribe,* 288 Pa. 193, 135 A. 729; *Bailey v. Alexander Realty Co.,* 342 Pa. 362, 20 A. 2d 754; *Hild v. Montgomery,* 342 Pa. 42, 20 A. 2d 228; *Daugert v. Scranton Contracting Co.,* 345 Pa. 206, 26 A. 2d 298; *Silver v. Hause,* 285 Pa. 166, 131 A. 668.

Judgment affirmed.